# Commonwealth *v.* Everhart, Appellant.

*Criminal law—Forcible entry—House in possession of employee—Termination of employment—Master and servant—Breach of the peace.*

Where a person employed to operate a flouring mill occupies a dwelling which is part of the mill property, not as a tenant but merely as an incident to his employment, and after the termination of the employment and upon the employee's refusal to leave the dwelling, the employer who owns the mill and the appurtenant dwelling, enters the house by removing a window sash, ejects the occupant and his family and removes their goods, such employer may be convicted of forcible entry, although he used no more force than was necessary and offered no violence or threats to the occupant or any member of his family.

Argued April 22, 1914. Appeal, No. 23, March T., 1914, by defendants, from judgment of Q. S. Perry Co., Aug. Sessions, 1913, on verdict of guilty in case of Commonwealth v. J. K. Everhart et al. Before RICE, P. J., HENDERSON, ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Affirmed.

Indictment for forcible entry and detainer.
At the trial the jury returned a verdict of guilty.

On a rule for a new trial and motion in arrest of judgment SEIBERT, P. J., filed the following opinion:

The bill of indictment preferred in this case contains two counts. The first count charges the offenses of forcible entry and detainer, avers the evicted prosecutor, John W. Yohn, was in peaceable possession of a certain dwelling house and its curtilege, situate in Greenwood township, Perry county, Pa., particularly described, but did not aver that he was seized of any estate therein, and that on July 1, 1913, he was by the defendants, "with force and arms and with a strong hand, unlawfully, violently, forcibly and injuriously" expelled therefrom and kept out of the same, etc. The second count in like phraseology charges the offenses of forcible entry and detainer

as to the same premises wherein the prosecutor was seized of an estate for years.

Before the jury was sworn defendants' counsel moved to quash the first count in the bill for the reason that it did not set forth that the prosecutor, at the time of the alleged forcible entry, had any estate whatever in the premises therein described and of which he was alleged to have been at the time in peaceable possession. The motion was refused, plea of "not guilty" entered and case proceeded to trial.

Briefly stated the material facts as established by the undisputed testimony were as follows:

J. K. Everhart, one of the defendants, was in 1910 and still is the owner of a merchant flouring mill, situate in Greenwood township, Perry county, Pa., on the Cocelamus creek, the waters of which supply the motive power of the mill. The land appurtenant to the mill comprises about one and one-half acres, divided by the stream, with the mill on the western bank and a dwelling house and outbuildings and curtilage appurtenant on the eastern bank; the dwelling house was occupied by the miller who from time to time operated the mill, as incident to the operation of the mill and as a part of his wages therefor. In the fall of 1910 a contract was entered into between the said J. K. Everhart and J. W. Yohn whereby the latter became the hired employee of the former as the miller to operate the said flouring mill, and for his services in that respect the said Yohn was to receive as wage compensation for the year April 1, 1911, to April 1, 1912, the several items of $200, flour for his family use and have the occupancy and use of the said dwelling house, with yard, garden, stable and all other outbuildings. On April 1, 1912, a further contract of hiring was entered into between the same parties for like services by Yohn, on the same terms, for another year ending April 1, 1913. About the last of December, 1912, Everhart gave Yohn written notice to quit and remove from the said dwelling house

and curtilage on April 1, 1913, and either prior to or upon the expiration of the second year of hiring also informed the said Yohn that he was discharged from his employ as miller at the Cocelamus mill on April 1, 1913, from which time the mill was operated by another and different person employed by Everhart. Yohn did not vacate the dwelling on April 1, 1913, but against frequent demands of Everhart so to do, coupled with offers to provide another house for Yohn's occupancy and to haul his household goods and other property to such house, obdurately remained and continued in the possession and occupancy of the said dwelling house until evicted therefrom on July 1, 1913. On June 30, 1913, H. J. Wright, constable of Newport borough, and J. H. Doughten, constable of Greenwood township (co-defendants in the bill of indictment with J. K. Everhart), went to the said dwelling house, then in the occupancy of the said Yohn and his family, and finding that Yohn was not at home, Constable Wright informed Mrs. Yohn, wife of the prosecutor, that he and his companion had come there at that time for the purpose of putting them out of possession of those premises; but, as Yohn was absent they would go away and return the next morning, July 1, to dispossess them, and requested her to tell her husband that he remain at home the next day.

About 9 o'clock the next morning, July 1, 1913, the said Wright and Doughten, constables, again came to the premises of the mill dwelling, bringing with them John Howell; immediately after their arrival, the said J. K. Everhart, in company with William Kough, James Smith and S. D. Myers also arrived in an automobile. All these persons were there present at the instance of the said Everhart, and not pursuant to any course of legal procedure.

They found Mr. Yohn again absent and his wife and children in the house, with the doors locked and the windows firmly fastened against any opening in the

ordinary way.  No heed being paid by those within
the dwelling to the demands of either the owner, Mr.
Everhart, or the constable, Mr. Wright, for their ad-
mission, by the direction of Everhart, Wright procured
some implements and with them tore away the outside
frame fastenings of a window, removed the upper and
lower sashes and Wright and Doughten entered the
dwelling through the vacant window space; having so
entered they removed the door locks, opened the doors
and, with the assistance of the others then present,
carried out all the household effects of the prosecutor,
placed them on the bank of the creek and, Yohn having
arrived during the process of eviction, he, his wife and
children were persuaded to go without the dwelling,
after which the window sashes were replaced, the locks
refastened to the doors, the doors locked and the keys
delivered to the said J. K. Everhart.  No violence was
done or offered to be done either to Mr. Yohn or to
any member of his family; nor were any threats of per-
sonal injury made.

Under this state of facts the court instructed the jury
that there could be no conviction of either charge laid
in the second count of the bill, and no conviction of the
forcible detainer charged in the first count; but that,
if the jury believed the testimony of the witnesses for
the commonwealth, which was undisputed, they should
find the defendant guilty of forcible entry as charged
in the first count, and the jury found accordingly.

Upon the rendition of the verdict counsel for the de-
fendants made a motion in arrest of judgment, and, in
case the court should be of the opinion there was any
issue of fact which should be determined by a jury, for
a new trial; and assigned sixteen reasons in support
thereof.  These allege error upon the part of the court
in refusing to quash the first count in the bill, in speci-
fied portions of the charge and in the answers to the points
submitted by the commonwealth and the defendants, and
are all comprised under four general heads, to wit:

1. In refusing to quash the first count in the bill of indictment for the reason "That the said count does not set forth that the prosecutor, J. W. Yohn, at the time of the alleged forcible entry, had any estate whatever in the lands and premises in the said bill described, and of which the said Yohn is therein alleged to have been at the time in peaceable possession."

2. In instructing the jury to the effect that, while it was the duty of a servant or employee in occupancy of premises incident to his employment to surrender the same at the termination of his period of hiring, or upon his discharge; that if he did not so surrender occupancy the owner had the right to put him out of possession, provided he did it in a way not violative of any provision of law, not using any unmeasured degree of force but keeping within prescribed limits; and that if they believed the testimony of the witnesses for the commonwealth as to the manner of the eviction of the prosecutor and his family, the offense of forcible entry was made out as charged in the first count.

3. In instructing that the undisputed testimony shows that the prosecutor was in the actual, exclusive and quiet possession of the premises for two years and better, and that it made no difference what kind of possession it was, so that it was actual, quiet and peaceable, if the jury believed the testimony, then the defendants were guilty of the offense of forcible entry, because they had done what the statute forbade.

4. In refusing the points of the defendant to the effect that to constitute the offense of forcible entry there must be proven acts of terror or violence, or such threats, menaces, signs or gestures, as may give the persons in possession of the property ground to fear personal injury or danger in standing in defense of the possession, and in affirming the points of the commonwealth to the contrary.

These are all reducible to two abstract propositions, to wit:

First. That the possession of Yohn, the prosecutor, was not of such nature as is necessary to sustain a charge of forcible entry; and

Second. That the nature and character of the entry as made into this dwelling was not such as to constitute the offense of forcible entry.

As to the first and including the civil side of the question:

Under the undisputed evidence the prosecutor, J. W. Yohn, was in the occupancy of the dwelling house appurtenant to the mill under no distinct right of possession as a tenant holding a leasehold estate, but as incident to his hiring or employment, or as a part of the contract price he was to receive as compensation for his services as the miller; his possession was that of his employer, Everhart, and could not survive the hiring to which it was incident. When his term of hiring was ended, or he was discharged by his employer, his right to be on the premises ended and it was his duty to quit and remove therefrom: Taylor v. Cole, 3 Term Rep. 292, 1 Smith's Leading Cases, 1347, and note pp. 1353–1359; Doe v. Derry, 9 Car. & P. 494, 38 E. C. L. 194; Haywood v. Miller, 3 Hill (N. Y.), 90; Bertie v. Beaumont, 16 East, 33; Mahew v. Suttle, 4 El. & Black. 347, 82 E. C. L. 347; White v. Bayley, 10 C. B. (N. S.) 227, 100 E. C. L. 227; Bowman v. Bradley, 151 Pa. 351; Huggins v. Bridges, 29 Pa. Superior Ct. 82; Kerrains v. People, 60 N. Y. 221, 19 Am. Rep. 158; Chatard v. O'Donovan, 80 Ind. 20, 41 Am. Repr. 782; Bourland v. McKnight, 78 Ark. 427, 4 L. R. A. (N. S.) 698, with extended subject note; Mead v. Owen, 80 Vt. 273, 12 L. R. A. (N. S.) 655; Noonan v. Luther, 206 N. Y. 105, 41 L. R. A. (N. S.) 761.

If one so in actual occupancy of lands refuses to vacate, then the owner of the premises may exercise his common-law right to set him out of possession, if he can do so without committing a breach of the peace: Overdeer v. Lewis, 1 W. & S. 90; Rich v. Keyser, 54 Pa. 86; Com. v. M'Niele, 8 Phila. 438; 3 Cyc. 1045.

But when we come to consider the criminal phase of cases such as this, at the threshold of the inquiry lies the rule that, when the offense charged is forcible entry simply, with no looking to an order of restitution, "Neither title or right of possession is at issue, or can be made at issue:" Bouvier's Law Dic. (Rawle's Rev.) 811; 2 Whart. Crim. Law (9th ed.), secs. 1104, 1108; Pennsylvania v. Lemmon, Add. 315; Burd v. Com., 6 S. & R. 252; Torrence v. Com., 9 Pa. 184; Vanpool v. Com., 13 Pa. 391; Com. v. Brown, 138 Pa. 447; People v. Rickert, 8 Cowen, 226; People v. Leonard, 11 Johns. 509; People v. Brinkerhoff, 13 Johns. 340.

"By the common law," says Judge ROBERTS in his digest of British statutes in force in Pennsylvania, "one who has a right of entry into lands might enter with force and arms and detain his possession by force. This occasioned great inconvenience and frequent breaches of the peace. It afforded an opportunity to powerful men, under the pretense of feigned titles, forcibly to dispossess their weaker neighbors." English history records that such practices became alarmingly prevalent in the reign of Richard II, who, in 1377, when a lad of eleven years, without a guiding regency, succeeded to the English throne on the death of his grandfather, Edward III, which latter left his grandson a legacy of multiplied trouble through wars with France and Spain and Scotland. Furthermore, with an infant on the throne, the barons became discontented and truculent, the great nobles began to exploit their ambitions and inaugurate jealous quarrels, parliament grew at odds with the king and a realm-wide turbulence prevailed. "Hence" again says Judge ROBERTS, "it became necessary by several statutes to restrain all persons from the use of such violent methods even of doing themselves justice;" and the first of such statutes was that of 5 Richard II, ch. 8, A. D. 1381, which provided:

"The penalty where any doth enter into lands when it is not lawful, or with force: And also, the King de-

fendeth, that none from henceforth make any entry into lands and tenements, but in case where entry is given by law; and in such case not with a strong hand nor with multitude of people, but only in peaceable and easy manner. And if any man do to the contrary, and therefore be duly convict, he shall be punished by imprisonment of his body, and thereof ransomed at the king's will."

This statute, as stated by Judge ROBERTS, provided no speedy remedy, but left the party to the common course of proceeding by indictment or action, nor did it contain any provision against forcible detainer. Consequently, ten years later (1391) was enacted the statute of 15 Richard II, ch. 2, which gave a summary remedy for a forcible entry. But it was not until 1429, 8 Henry VI, ch. 9, that a remedy was given for a forcible detainer; and not until 1623, 21 Jac. 1, ch. 15, that the justices were empowered to award restitution.

Rex v. Smyth, 5 Car. & P. 201, 24 E. C. L. 279, was an indictment for forcible entry. Mrs. Smyth, the defendant, was the wife of the prosecutor, Carmichael Smyth, and on November 12, 1829, took a house separate from her husband; on November 17 her husband and his servant went to her landlord and through him obtained possession of the house during the wife's absence, and put a third person, Teresias, in possession; on November 18, Mrs. Smyth came to the house in company with two men and were refused admittance; one of the men, having broken a pane of glass, pushed down the upper sash of the window, got into the house, opened the door and Mrs. Smyth went in and told Teresias he had better go out peaceably, or they would put him out. Teresias went out leaving Mrs. Smyth and her party in possession. Lord TENTERDEN said in summing up: "An indictment for a forcible entry cannot be supported by evidence of a mere trespass, but there must be proof of such force, or at least such a show of force, as is calculated to prevent any resistance. In

point of law, although Mrs. Smyth had taken the house separately from her husband, it must be taken as his house; but still she would have the right to enter the house of her husband.   However, if you should think she came with violence and the strong hand, or at least such show of force as to prevent resistance, I think, as at present advised, she would be guilty of this offense, notwithstanding her being the wife of the party whose house this is alleged to be."

Newton v. Harland, 1 Man. & Gr. 644, 39 E. C. L. 581, was trespass for forcible eviction of a tenant who remained in possession after expiration of term.   COLT-MAN, J., said: "But it is said that a person who has a right of entry ought to enter peaceably.   The true doctrine on this subject is stated, as I apprehend, correctly in Taylor v. Cole, 3 T. R. 292" (1 Smith's Lead. Cas. 1347 et seq.) "where it is said: 'It is true, persons having only a right are not to assert that right by force; if any violence is used it becomes the subject of a criminal prosecution.'   So, in Taunton v. Costar, 7 T. R. 431, it is said: 'If the landlord had entered with a strong hand to dispossess the tenant by force, he might have been indicted for a forcible entry.' . . .  For the preservation of the peace, the law will punish for the forcible entry; but the tenant at sufferance being himself a wrongdoer, ought not to be heard to complain in a civil action for that which is the result of his own misconduct and injustice.   The distinction between the civil rights of a person forcibly turned out of the possession of land, and the penal sanctions by which he is protected from being forcibly dispossessed, are drawn in a marked way in the cases in our old books relating to the statutes of forcible entry.   Although by those statutes, all forcible entries were prohibited, even by those who had the title to enter, yet the party could maintain no action on the statutes. . . .   On these grounds I am of opinion that, although the defendant if guilty of a forcible entry, is responsible for it in the

way of a criminal prosecution, yet that, as against the
plaintiffs, who are wrongdoers and altogether without
title, he has obtained by his entry a lawful possession,
and may justify in a civil action the removing them,
in like manner as in the case of any other trespasser."
TINDALL, C. J., and ERSKINE and BOSANQUET, JJ.,
concurred.

Harvey v. Brydges, 14 Mees. & Wels. (Excheq. 1845)
437, was an action of trespass for breaking a close vi et
armis but not manu forti, and PARK, B., said: "The
next point was that raised in Newton v. Harland, 1
Man. & Gr. 644, and if it were necessary to decide it,
I should have no difficulty in saying, that when a breach
of the peace is committed by a freeholder, who, in order
to get possession of his land, assaults a person wrong-
fully holding possession of it against his will, although
the freeholder may be responsible to the public in the
shape of an indictment for a forcible entry, he is not
responsible to the other party."   See also Regina v.
Studd, 14 L. T. (N. S.) 633.

In People v. Brinkerhoff, 13 Johns. 340, it was held
that an indictment for forcible entry must set forth
whether the estate of the prosecutor be a freehold or a
term of years; but that indictment was under a statute
providing that the act to prevent forcible entries and
detainers should "extend as well to tenants for years
and guardians, as to such as have estates of freehold,"
which enumerated classes were alone within the scope
of the statute.   But in People v. Van Nostrand, 9 Wend.
50, the statute had been changed and required the
prosecutor to show only "that he was peaceably in
the actual possession of the premises at the time of a
forcible entry;" and in that case the court said: "These
new provisions very properly bring back the statute of
forcible entry and detainer, among the most valuable
of our remedial statutes, to the original intent and pur-
pose for which the numerous English acts, of which our
old statute was essentially a copy, were passed, to wit,

to prevent individuals from doing themselves right by force, and to protect persons in the peaceable occupation of lands from a forcible dispossession without the authority of law: 4 Black. Com. 148; 1 Hawk. 274." Substantially to the same point is People v. Reed, 11 Wend. 160.

We do not understand Kerrains v. People, 60 N. Y. 221, 19 Am. Repr. 158, to be at variance with the preceding cases as to the matter then properly before the court for determination; similarly as to Noonan v. Luther, 206 N. Y. 105, 41 L. R. A. (N. S.) 761 and note; Presby v. Benjamin, 169 N. Y. 377, 57 L. R. A. 317. See Bourland v. McKnight, 4 L. R. A. (N. S.) 698, and extended subject note.

Napier v. Spielmann, 127 N. Y. App. Div. 567, holds that an action for forcible entry and detainer will not lie when the person ousted is a servant or mere licensee. Unquestionably this is correct on the facts and the nature of the proceeding and in harmony with all the cases upon the subject; the action was a civil one for the recovery of damages, and the employee was a wrongdoer in not having vacated the premises and was properly nonsuited. Our own case of Yoder v. Yoder, 239 Pa. 12, holds to the same purport.

The statute 5 Rich. II, ch. 8, was not reported by the judges as being in force in Pennsylvania, supposedly because it was considered as supplied by our own statute of 1700, 1 Smith's Laws, 1, which provided as follows:

"Be it enacted, That whosoever shall violently or forcibly enter into the house or possessions of any other person within this province or territories, being duly convicted thereof, shall be punished as a breaker of the peace, and make such satisfaction to the party aggrieved as the circumstances of the fact will bear."

Under this statute the breach of the peace was the salient thing forbidden, sought to be guarded against and punished if committed, as clearly held in Pennsylvania v. Robison, Addison, 14 (1791), where the court

said: "The possession may be in one, the right of pos-
session in another, and the right in a third. ·. . .  In
ejectment, the right, and the right of possession come
in question.   In an indictment for a forcible entry,
neither comes in question, but the possession only and
the force.   If one having the right, or right of possession,
may support an ejectment, it follows not that he may
enter by force, or that no less possession than a rightful
one, or such as would support an ejectment, is pro-
tected from a forcible entry.   For, whatever right, either
of property or possession, the man who makes the entry
may have, he must not commit a crime in exerting it;
and he commits a crime, punishable by indictment, if
he enter with force, on a person having no right, not
even of possession. . . .   It is not the degree or quan-
tity of possession that constitutes the right of possession,
but the manner in which the possession was obtained;
and a possessor, without the right of possession, may
be as c,mpletely possessed, as one who unites in him-
self possession, right of possession and right, and is
equally protected against a forcible entry; though he
would not recover, or would be turned out in an eject-
ment."

Overdeer v. Lewis, 1 W. & S. 90, was an action of
trespass to recover damages for breakage of and injury
to goods of the plaintiff done by the defendant in dis-
possessing the plaintiff after his lease had expired by
its own limitation.   The court said: "Now, as the de-
fendant's lease had expired by its own limitation, there
could be no doubt that he was a tenant at will, though
he had not received notice to quit and the landlord
might forcibly dispossess him on the instant, by night
or day, and for motives of mere caprice; with this limi-
tation only, that he should use no greater force than
might be necessary, and do no wanton damage."   The
inference sought to be drawn in instances from this
language of the court, was to the effect that the limita-
tion of force to be used should be that ultimate degree

measured by the maximum of resistance—a sort of force majeure. That to so infer is a fallacy cannot be reasonably questioned, and is convincingly shown by the reasoning of Judge PARSONS in Com. v. Kensey, 2 Pars. 401, where he considers Overdeer v. Lewis, at length, and says that it would be a misapplication of the principle there decided, to say that it should govern in a prosecution for forcible entry; and p. 414, "It seems then to be clear that the lawfulness of the entry is not a ground of justification if the act was unlawful. The offense consists in the forcible manner in which the act is done, against the peaceable possession of one who occupies; it is a breach of the peace, and a crime against the public law. For that the accused must answer." In Kellam v. Janson, 17 Pa. 467, Justice LOWRIE, after discussing the case of Overdeer v. Lewis, says: "The legal remedies provided for such cases do not affect the right. They are necessary, because possession cannot always be properly assumed by the mere act of the claimant. In all such cases care must be taken that no public wrong be done by breach of the peace, and no private wrong by injuring the goods of the person in possession."

It was stated upon the argument, and correctly, that the courts had more than indicated that proceedings for forcible entry were not favored. Undoubtedly the proceeding has been at times unjustifiably invoked; but where the proper elements exist, then, as said in People v. Van Nostrand, 9 Wend. 50, the statute of forcible entry is among the most valuable of our remedial statutes, to prevent individuals from doing themselves right by force, and to protect persons in the peaceable occupation of lands from forcible dispossession without authority of law. In Respublica v. Devore, 1 Yeates, 501, the court said: "Proceedings under these acts of parliament should be discouraged, unless the party charged has been guilty of an evident force. The laws were made for the security of persons in the actual

possession of lands, which can scarcely be said of the prosecutor in the present instance." Kramer v. Lott, 50 Pa. 495, is a case where a prosecution for forcible entry should have been and was "discouraged"; there it was held that breaking open the door of an unoccupied schoolhouse on the Sabbath Day for the purpose of having preaching services in it, was not indictable, but a trespass and nothing more. See also Pennsylvania v. Waddle, Add. 41; Pennsylvania v. Lemmon, Add. 315; Pennsylvania v. Leach, Add. 352; Thompson v. Com., 116 Pa. 155; Com. v. Brown, 138 Pa. 447.

The Act of March 31, 1860, P. L. 382, sec. 21, protects the "party in possession" from the forcible entry, and what the character of the possession is clearly defined in Pennsylvania v. Robison, Add. 14, and Com. v. Kensey, 2 Pars. 401.

The argument of the learned counsel for the defendant to the effect that the possession of the mill dwelling by Yohn as incident to his employment, was the possession of Everhart, the employer and owner, who, therefore, had never parted with the possession, and when he made entry therein on July 1, 1913, in the manner he did, was only using a reasonable and necessary amount of force to retain that possession, and his act in that respect was one of protection of a then had possession, rather than an attempt to obtain a rightful possession, commands respect for the able counsel and excites the interest of the metaphysician, but—it is not convincing.

As to the second proposition and with regard to the criminal side of forcible entry:

That to constitute the offense there must be at least such acts of violence, or such threats, menaces, signs or gestures as may give ground to apprehend personal injury or danger in standing in defense of the possession, was said in Pennsylvania v. Robison, Add. 14, and numerous other cases. From this it was argued that, as the testimony showed that the defendants used no

abusive or threatening language towards the inmates of the mill dwelling, and, having once entered, that they offered them no personal indignities, such inmates were not put in fear, had no grounds for apprehension of personal injury, hence there were no circumstances of terror and the necessary elements to constitute the offense were lacking. But, we take it, there need not be actual terrorization of the occupants of a dwelling to constitute the offense, as, independently of our statute of 1860, it is held that an entry by breaking doors or windows of a dwelling is a forcible entry, whether any person be in the house or not. The issue is: Was there force sufficient to alarm, so as to cause surrender of possession, or to provoke a breach of the peace: 2 Whart. Crim. Law (9th ed.), sec. 1094. "An entry may be forcible not only in respect to the violence actually done to the person of a man, as by beating him if he refuses to relinquish possession; but also in respect of any other kind of violence in the manner of the entry, as by breaking open the doors of a house, whether any person be in it at the time or not, especially if it be a dwelling house: 1 Russ. on Crimes (8th Am. ed.), 308, citing 1 Hawk. P. C., c. 64, sec. 26. See also Pollen v. Brewer, 7 C. B. (N. S.) 371.

Unquestionably the purpose of the law to-day remains as anciently to preserve the peace and prevent breaches of it; and, as in times past there was opportunity to escape consequences under varied circumstances although the acts were extreme, the legislature of Pennsylvania determined to put an end to such miscarriages and clearly defined what should constitute the offense by the Act of March 31, 1860, P. L. 382, sec. 21, to wit:

"If any person shall with violence and a strong hand enter upon or into any lands or buildings, either by breaking open doors, windows, or other parts of a house, or by any kind of violence, or other circumstances of terror, or if any person after entering peaceably, shall

turn out by force or threats, or menacing conduct, the party in possession, every person so offending shall be guilty of a forcible entry," etc.

This statute is explicit, the acts enjoined are mala prohibita, and he who shall, with violence and a strong hand, enter into any dwelling by breaking open a window, against the will of its occupant, defies its provisions and incurs its penalty. To hold that the facts established by undisputed testimony in this case amounted to no more than a trespass, would be to disregard the plain language of the act, do violence to its spirit and destroy its remedial purpose.

And now, to wit, January 19, 1914: There being no facts in dispute which should be submitted to a jury the rule for a new trial is discharged, the motion in arrest of judgment is overruled and denied, and the defendants severally are directed to appear forthwith for imposition of sentence. Defendants except and bill sealed.

The court subsequently sentenced the defendants each to pay a fine of thirty-three and one-third cents and one-third of the costs of the prosecution.

*Errors assigned* were various instructions and the judgment of the court.

*James M. Barnett,* of *Barnett & Son,* for appellant.

*Luke Baker,* with him *Walter W. Rice,* district attorney, for appellee.

PER CURIAM, May 14, 1914:

The judgments against the several defendants are affirmed for the reasons given by the learned president judge of the court of quarter sessions in his opinion overruling the defendants' motion in arrest of judgment and for new trial.